STATE EX REL. ARMINGTON, RELATOR, v. WRIGHT, STATE TREASURER, RESPONDENT:

[Submitted December 3, 1895. Decided March 2, 1996.]

STATE ARID LAND GRANT COMMISSION—*Member of state officer.*—Under the act of March 18, 1895 (§§ 3530-3547, Political Code), creating a state arid land grant commission for the purpose of enabling the state to accept the offer of the United States to patent to the state certain desert lands under the conditions named in the act of congress of August 18, 1894, and providing for the appointment, and prescribing the powers of commissioners, who shall hold office for six years and who shall take an oath, and who shall receive a compensation of six dollars *per diem* while actually performing official duties, a member of such commission is a state officer whose compensation is fixed by law, and therefore, his *per diem* is not the subject of examination by the state board of examiners whose duties extend to the examination of all claims against the state except the compensation of officers fixed by law. (*State ex rel. Bickford* v. *Cook, ante,* page 529, cited.)

SAME— *Compensation of commissioner—Warrant for—State debt.*—The compensation of commissioners, appointed under the act of March 18, 1895, creating the state arid land grant commission, being paid by warrants drawn upon the Federal Grant Reclamation Fund, provided for in said act and dedicated especially to the redemption of warrants and interests accrued in pursuance of its provisions, such warrants do not create a claim against the state, but the holders must look alone to the special fund so created.

SAME—*Federal Grant Reclamation Fund—Trust fund.*—The Federal Grant Reclamation Fund, provided for by section 3543 of the Political Code, and created for the redemption of warrants and interests accrued in pursuance to the provisions of the act of March 18, 1895, creating a state arid land grant commission for the purpose of reclaiming desert lands under the conditions defined in the act of Congress of August 18, 1894, is not a state fund, but a trust fund, over which the state, through its officers as agents, exercises only such control as is consistent with the said act of congress in the execution of the trust, and therefore, the state treasurer is not prevented by section 34, article V of the constitution, prohibiting him from paying out of the treasury any money except appropriations made by law and on warrant drawn by the proper officer, from registering a warrant drawn for the *per diem* of a commissioner.

SAME—*Acceptance of grant by congress—Validity of act.*—The acceptance by the state legislature of the grant by congress of certain desert lands on condition of the state reclaiming them, where the law of acceptance especially provided that no liabilities other than for limited incidental expenses of a commission should ever accrue to the state under its provisions, was a valid legislative act.

SAME—*Public lands—Constitutional law.*—The provisions of the state constitution (Ar-

ticle XVII) in respect to public lands, relate only to such lands as the state has ac-
quired or may acquire title to after the same are selected under laws provided for
that purpose, and are not applicable to lands granted to the state under the act of
congress of August 18, 1894.

ORIGINAL PROCEEDING. *Mandamus* to state treasurer to
compel him to register a warrant issued by the arid land com-
mission.

Statement of the case by the justice delivering the opinion.

This is a proceeding against Wright, as state treasurer, to
compel him to register a warrant drawn by the arid land com-
mission. Relator's petition alleges the appointment of the
arid land commission, pursuant to the act of the legislature,
approved March 18, 1895, concerning state arid lands. Po-
litical Code, § 3530 *et seq*. He also alleges the qualification
of the members and the organization of the board, and that
he was present at a certain meeting, and was entitled to com-
pensation, fixed by the statute, for two days' services; that
the commission audited the claim, and issued and delivered to
relator a warrant; that he presented the warrant to the state
treasurer, who refused to register it.

The state treasurer does not deny any of the aforesaid alle-
gations, but pleads, by way of avoidance : That the claim of
relator was a claim and account incurred by the arid land com-
mission, and should have been presented to the state board of
examiners, and, upon approval by it, should have been trans-
mitted to the state auditor, who should have drawn a warrant
and transmitted it to the state treasurer, in the mode and man-
ner provided by section 3532 of the Political Code, and that
the arid land commission had no authority to draw relator's
warrant, and the state treasurer no authority to register it.
That the only reasons why the treasurer refused to register
said warrant were:

(a)   That said account had not been passed upon, audited,
and approved by the state board of examiners of the state of
Montana;

:(b)   That the auditor of the state of Montana had not
drawn his warrant therefor, and that the said respondent had

no authority to register the same, as such an act, and all thereof, would be in violation of section 34, art. 5, of the constitution;

(c)   That the legislature of the state of Montana had made no appropriation for the payment of said claims, and that no taxes had been levied for such purpose.

To this answer relator demurred on the ground that it did not state facts sufficient to constitute a defense.

*John B. Clayberg,* for relator.

*Henri J. Haskell,* Attorney General, for Respondent.

HUNT,  J.—The first point involved is, was relator's claim one which must have been submitted to the state board of examiners?   If the claim upon which the relator's warrant was issued is not a claim against the state, or is the compensation of an officer fixed by law, then, under the decision of this court in *State* v. *Cook, ante,* p. 529, the state board of examiners has no authority to pass upon the same.

Congress, by the act of August 18, 1894, "An act making appropriations for sundry civil expenses of the government for the fiscal year ending June 30, 1895, and for other purposes," authorized the secretary of the interior, with the approval of the president, to contract and agree to patent to the states of Washington, Montana, or any other states, as provided in the act, in which may be found desert lands, not to exceed 1,000,-000 acres of such lands to each state, under certain conditions.   The act provides as follows:

"Sec.  4.   That to aid the public land states in the reclamation of the desert lands therein, and the settlement, cultivation and sale thereof in small tracts to actual settlers, the secretary of the interior with the approval of the president, be, and hereby is, authorized and empowered, upon proper application of the state to contract and agree, from time to time, with each of the states in which there may be situated desert lands as defined by the act entitled 'An act to provide for the sale of desert land in certain states and territories,'

approved March third, eighteen hundred and ninety-one, binding the United States to donate, grant and patent to the state free of cost for survey or price such desert lands, not exceeding one million acres in each state, as the state may cause to be irrigated, reclaimed, occupied, and not less than twenty acres of each one hundred and sixty-acre tract cultivated by actual settlers, within ten years next after the passage of this act, as thoroughly as is required of citizens who may enter under the said desert land law.   Before the application of any state is allowed or any contract or agreement is executed or any segregation of any of the land from the public domain is ordered by the secretary of the interior, the state shall file a map of the said land proposed to be irrigated which shall exhibit a plan showing the mode of the contemplated irrigation and which plan shall be sufficient to thoroughly irrigate and reclaim said land and prepare it to raise ordinary agricultural crops and shall also show the source of the water to be used for irrigation and reclamation, and the secretary of the interior may make necessary regulations for the reservation of the lands applied for by the states to date from the date of the filing of the map and plan of irrigation, but such reservation shall be of no force whatever if such map and plan of irrigation shall not be approved.   That any state contracting under this section is hereby authorized to make all necessary contracts to cause the said lands to be reclaimed, and to induce their settlement and cultivation in accordance with and subject to the provisions of this section; but the state shall not be authorized to lease any of said lands or to use or dispose of the same in any way whatever, except to secure their reclamation, cultivation, and settlement.   As fast as any state may furnish satisfactory proof according to such rules and regulations as may be prescribed by the secretary of the interior, that any of said lands are irrigated, reclaimed and occupied by actual settlers, patents shall be issued to the state or its assigns for said lands so reclaimed and settled: *provided*, that said states shall not sell or dispose of more than one hundred and sixty acres of said lands to any one person, and any surplus of money de-

rived by any state from the sale of said lands in excess of the cost of reclamation, shall be held as a trust fund for and be applied to the reclamation of other desert lands in such state. That to enable the secretary of the interior to examine any of the lands that may be selected under the provisions of this section, there is hereby appropriated out of any moneys in the treasury, not otherwise appropriated, one thousand dollars.''

The legislature of the state, for the purpose of enabling the state to accept the offer of the United States made in the act of congress, passed the state arid land law, under which relator claims his compensation. This statute of the state provides for the appointment of five state arid land grant commissioners, who shall constitute a commission. Each commissioner shall hold office for six years from date of his appointment, and shall take an oath of office. The commission is obliged to organize, and is clothed with power to choose a secretary and an engineer. It has full power and authority to take all steps necessary to comply with, all and singular, the conditions of the said act of congress, to the end that the state may receive the full benefits and advantages accruing to it from and by the congressional act. It is also expressly provided that each commissioner shall receive, as compensation for his services, six dollars *per diem*, while actually performing his official duties, and also traveling expenses actually incurred in the performance of his duties. The commissioners shall receive their compensation in warrants drawn upon the fund ''hereinafter created,'' and the accounts of the commissioners, together with, all and singular, the actual expenses of said commission, ''shall be presented, passed upon and paid in the same manner as provided by law for the auditing and payment of other accounts against the state.''

The powers of the commission are extensive. It may, *inter alia*, contract for the entire expenses of reclaiming any por tion of the land donated by congress, at a price not to exceed eight dollars per acre for all land reclaimed, with this express *proviso*, however: ''*That no liability or indebtedness is created against the state by, under or through said contracts.*''

Provision is made for the expenses of such reclamation by issuing warrants to the contractor for the full amount of the contract price, less 15 per cent of all estimates made by the engineer. The relator's powers, duties, tenure, and emoluments make him an officer of the state, with compensation fixed by law. His *per diem* is therefore not the subject of examination by the state board of examiners. (*State* v. *Cook, supra.*)

Further examination of the law confirms this opinion. Provision is made for the sale of the lands to actual settlers. The money realized from such sales shall go into what the law denominates the "Federal Grant Reclamation Fund." No payment can be made from this fund for any purpose whatever, and no part of said fund can be credited to any other fund. It is especially dedicated to the redemption of warrants and interest accrued and to accrue under the arid land act of the legislature. There is, throughout the entire state law referred to, no mention of any warrants other than those in favor of the commissioners and the employes and contractors, nor is there any mention of any fund except the "Federal Grant Reclamation Fund." It follows, therefore, that the compensation of the commissioners shall be paid by warrants on this fund, and from it exclusively. The law under consideration, like the capitol commission bill, already considered by the court (*State* v. *Cook, supra*), has created the special fund named in its provisions for the purpose of enabling the state to accept the beneficial offer of the United States. The fund created by the law is pledged for the payment of all outstanding warrants to be issued against it under the provisions of the act. No holder of any warrant can claim against the state. He may look alone to the fund established, and to the custodians of that fund, and other agents of the state, to do their respective duties under the act.

There are two classes of expenses of the commission—one including the compensation of the commissioners and their employes; another embracing the actual traveling and other expenses of the commission. Relator admits that the latter class includes office rent, stationery, and other incidental

expenses, and concedes that these must be presented to the state board of examiners, inasmuch as the legislature has appropriated $1,000 for the years 1895 and 1896 for the use of the commission in carrying the act into effect. There being a special provision including actual expenses of the commission as accounts against the state, such expenses must be presented to the board of examiners, as other claims against the state. (Political Code, § 3532.)

The clauses providing for the reimbursement to the state of all payments made out of this $1,000 appropriated are evidently to protect the state for its outlay in inaugurating the public irrigation scheme. And to the extent only of this $1,000 for incidental expenses of the commission in carrying the act into effect may there be any liability on the part of the state. Eventually this sum, when repaid, will belong to the state, entirely subject to state control. (Section 3545.)

2. The attorney general next suggests that, if the treasurer registered the relator's warrant, he would violate the constitutional provision prohibiting him to pay out of the treasury any money except appropriations made by law, and on warrant drawn by the proper officer in pursuance thereof, except interest on the public debt. (Const. art. V, § 34.)

Eliminating from the case the appropriation of $1,000 heretofore referred to, we regard this Federal Grant Reclamation Fund as impressed with a trust under the act of congress. The state cannot make it a fund of its own, to be dealt with as may be state funds contemplated by the constitution. No control can be exercised over it, beyond such as is consistent with the act of congress in the execution of the trust, which is to aid the state in the reclamation of desert lands, and the settlement, cultivation and sale thereof in small tracts to actual settlers. The power of the state is limited to the acceptance of the offer of the United States, and the execution of the trust assumed by the acceptance thereof. The officers of the state are but agents designated by the law of the state to carry out the legislative will. They do not (except in the disbursement of the $1,000 in legitimate claims against such appro-

priation for limited purposes) act in any capacity other than as agents to carry out the offer of congress through the enabling act of the state.

It is to be observed that the United States limits the state in its right of sale or disposal of the quantity of land to any one person, and expressly requires any surplus of money derived by any state from the sale of said lands in excess of their cost of reclamation to be held as a trust fund to be applied to the reclamation of other desert lands. The trust relationship must continue over the funds. The treasurer, therefore, is not prevented by the constitutional clause cited—which has reference to state funds—from registering the relator's warrants as required by law, without regard to any action being had by the auditor or the state board of examiners.

3. It matters not that the legislature has made no appropriation for the payment of claims such as relator's in this case, and has not levied any taxes to meet the same. Having decided that there can be no state debt created to pay the warrants, there can be neither a levy of taxes, nor an appropriation of state funds made to pay them.

From our opinion upon these several propositions, the relator is entitled to have the warrant issued to him registered by the treasurer, unless the law requiring him to register is in itself unconstitutional. The validity of the statute has been ably discussed by counsel for relator, although it was not seriously questioned by the attorney general.

We are satisfied that the law is valid. The United States had the power to make the offer to the state, to grant it the lands, provided the state would reclaim them. Of this there can be no doubt. Now, if the state could accept the offer of the United States at all, it could only act through its legislature, in the exercise of power requisite to making its acceptance effective. That it has attempted to accept the offer is expressed by the first section of the law of 1895, which recites "that for the purpose of enabling the state to accept the offer of the United States * * * and for the purpose of re-

claiming the lands    *    *    *    in accordance with the terms of said act (of congress), a commission shall be and is hereby created under the name of the State Arid Land Commission,'' etc.

We know of no constitutional limitation forbidding the legislature of the state from receiving the benefits of congress by way of this offer, where it is especially provided in the law of acceptance that no debts and no liabilities, other than for limited incidental expenses of the commission, can ever accrue to the state, under its provisions.    We believe the acceptance was valid.    The legislature having accepted the offer, its next right, in the premises, was to provide a detailed method whereby the state could execute that acceptance and make it operative.    This they have done.    The attitude of the state thereby became that of an agent of the United States, to make effective the offer of the latter to part with its desert lands to the state or its assigns, provided the state can reclaim such lands, and induce the actual settlement and cultivation thereof. This the state has undertaken to make possible by legislation. If the state fails, the United States will not issue its patents. If the state succeeds, the United States has agreed to pass the title to the state, or its assigns, upon satisfactory proofs of the fulfillment of the requirements of the act of congress.    The very conditions precedent to the right of the state to obtain patents—reclamation, settlement, cultivation—include those which will thereafter divest the state of its title.    Under any conditions, the state only holds the legal title for the benefit of real owners, actual settlers upon the land, irrigating and cultivating the same.    The benefit to the state lies in the advantages of having such actual farmers.

The provisions of article XVII of the constitution, to the effect that all lands in the state that have been, or may hereafter be, granted to the state by congress, shall be public lands, and shall be held in trust for the people, to be disposed of as hereafter provided for the respective purposes for which they have been or may be granted, are not applicable to the lands which the United States proposes to part with under the act of congress already referred to.

We think that the learned counsel for the relator is correct when he says that the provisions of the state constitution relate only to such lands as the state has acquired or may acquire title to after the same are selected under laws provided for that purpose. But under this congressional act no title is passed to the state or its assigns until after the land has been reclaimed in the manner provided by the law. (*Rice* v. *Minn. & N. W. R. R. Co.*, 1 Black, 358.)

The state has the power to make contracts with individuals or corporations for the placing of water upon the land, and may make contracts to sell, with actual settlers—to cultivate at least 20 acres on each 160-acre tract. The state may thus earn this land for the benefit of its settlers, providing it complies with the requirements of the acts of congress; but until it does so earn it there is no transfer of title, and the state is expressly limited in its control and use of the land. The state can never dispose of the lands in the manner provided by the constitution and laws of the state relative to lands generally.

At the time of the adoption of the constitution, it could scarcely have been contemplated that the United States would ever authorize the state to accept such a trust as that offered by the provisions of this somewhat unusual, but generous law of congress, and accepted by the state. We, therefore, cannot believe that any sections of the constitution which are generally applicable to lands where the title may vest in the state by grant *in præsenti*, and which are wholly incompatible with the execution of this trust, apply to this offer, and to such lands as may be reclaimed by settlers under the methods provided for carrying the offer into effect.

It follows that, the respondent having failed to give any sufficient reason for not registering relator's warrant, the demurrer to his answer is sustained, and the writ will issue.

*Writ granted.*

PEMBERTON, C. J., and DE WITT, J., concur.